UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANET SUSAN EASTRIDGE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-04-3515 |
| | § | |
| SHELL CHEMICAL COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this employment discrimination case is Defendant Shell Chemical Company's ("Shell")[1] motion for summary judgment on all of Plaintiff Janet Susan Eastridge's ("Eastridge") claims. After considering the parties' filings and the applicable law, the Court finds that the motion, Docket No. 23, should be and hereby is **GRANTED**.

## I. BACKGROUND[2]

Eastridge was employed by Shell for twenty-three years, rising to the position of Manager in a division of Shell's Customer Fulfillment Health, Safety & Environment ("HS&E") group in Houston, Texas. In May 2002, Susan Tholstrup ("Tholstrup") became Manager of the HS&E group. Tholstrup, in turn, installed Elizabeth Williams ("Williams") as the HS&E Advisor and Eastridge's direct supervisor. Williams reported directly to Tholstrup.

---

[1] There is some dispute between the parties as to Defendant's actual corporate name. That conflict is, however, immaterial to this Court's resolution of the motion for summary judgment, as the parties agree that Shell is the real party in interest to this suit.

[2] For the purposes of Shell's motion for summary judgment, the Court construes all contested factual issues in the light most favorable to Eastridge, the non-movant. *See, e.g.*, *Minter v. Great Am. Ins. Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005).

1

On January 2, 2003, Eastridge made air and hotel reservations for a business trip to London. She originally planned to travel to London on Monday, January 13 and return on Sunday, January 19, 2003. After discovering that her husband, a Shell executive, might be able to accompany her on the trip in a non-business capacity, however, Eastridge revised her travel plans, extending her anticipated stay until Wednesday, January 22. Eastridge tentatively marked the additional days on her office calendar as vacation days, although she hoped to be able to meet with Craig Nessel, a business associate stationed in Brussels, during those days, in which case Shell policy would permit her to recoup the expenses incurred thereon.

On January 13, 2003, Eastridge and her husband flew, as planned, to London, where Eastridge attended a Shell business meeting from Wednesday, January 15 until Friday, January 17. During that time, Nessel informed Eastridge that he would be unable to travel to London to see her during her stay. After the Shell conference concluded, Eastridge spent the weekend of January 18-19 sightseeing with her husband. Both Eastridge and her husband have testified that Eastridge then spent the remainder of her time in London working in her hotel room. The couple returned to Houston on Wednesday, January 22.

Shortly after she returned to work in Houston, Eastridge received a call from Williams, who warned her that her job was in jeopardy. When Eastridge asked why, Williams urged her to speak to Tholstrup. On March 6, Williams called Eastridge to inform her of her Individual Performance Factor ("IPF") rating for the preceding year. The IPF rating determines a Shell employee's base salary increase and variable pay amount for the coming year. Eastridge's 2002-2003 IPF rating was the lowest that she

had ever received.  When she inquired as to the reason for the poor rating, Williams stated that Eastridge should speak to Tholstrup and that Williams had recommended a higher rating for Eastridge.  Eastridge then scheduled a meeting with Tholstrup, to take place on Marcy 17.

On Monday, March 10, Eastridge submitted her expense report for the London trip, requesting reimbursement for $10,407.39 for the costs of her airfare, hotel, meals, telephone calls, and transportation, and requested a copy of the Individual Assessment Form ("IAF") associated with her 2002-2003 IPF rating.  Later that day, Tholstrup requested copies of Eastridge's expense statements.  One week later, on March 17, Tholstrup reviewed Eastridge's expense statements for the London trip.  After learning that Eastridge had designated January 20-22 as vacation days but subsequently requested reimbursement for expenses incurred on those days, and that Eastridge's secretary had reported that Eastridge had initially claimed to have worked in Washington, D.C. during those days, Tholstrup initiated an audit of Eastridge's expense statements.  The audit reflected some inconsistencies regarding, *inter alia*, Eastridge's contacts with Nessel during the trip and her claims for beverage expenses incurred by her coworkers during the trip.  According to Tholstrup, it also reflected that Eastridge had requested reimbursement for hotel, airline, meal, and other expenses incurred by her husband.

On the same day on which the audit took place, March 17, Eastridge and Tholstrup met to discuss Eastridge's IFP rating.  During that meeting, Eastridge informed Tholstrup that Williams had stated that she (Williams) had recommended a higher rating than that which Eastridge ultimately received.  Tholstrup called Williams, who confirmed the statement.  According to Eastridge, Tholstrup was, for reasons that are unclear,

3

furious that Williams had said such a thing. Following the IFP meeting, Tholstrup continued her investigation into Eastridge's expense reports, ultimately concluding that Eastridge should be fired for attempting to defraud Shell. On Thursday, March 20, Tholstrup obtained authorization from Fran Keeth, Shell's Chief Executive Officer ("CEO"), to terminate Eastridge's employment.

Tholstrup summoned Eastridge to a meeting with Debra Taylor, a Shell security officer, and Judy Lawton, a human resources official, on Tuesday, March 25. At that meeting, Tholstrup informed Eastridge of the expense discrepancies and informed Eastridge that she would be required to produce receipts to support her reimbursement request within two days. The following day, March 26, Eastridge filed an internal grievance and met with an internal dispute resolution team to discuss the audit. Two days later, Eastridge met with Tholstrup, Taylor, and Lawton and provided additional receipts for the London trip. At the conclusion of that meeting, Eastridge was suspended with pay. On April 2, Eastridge met with Keeth to discuss the situation, and on the following day, at Tholstrup's direction and with Keeth's approval, Eastridge's employment was terminated. She was then fifty-one years old.

Eastridge filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 8, 2004. She received a right-to-sue letter on June 10, 2004 and filed this suit on September 7 of that year. She alleges that her termination was the result of gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); and the desire to deprive her of retirement income to which she was entitled,

4

in violation of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132, 1140 ("ERISA").

According to Eastridge, Tholstrup made evident, from the inception of her tenure as head of the HS&E group, that she intended to reduce the median or average age of HS&E employees. During several HS&E meetings, Tholstrup displayed a graph depicting the age distribution of HS&E employees and noted that the group was disproportionately comprised of older employees. Eastridge also notes that Bebe Mora, an HS&E employee under the age of forty, traveled to London for the January 15-17, 2003 meeting, purchasing a full-price airline ticket instead of using the Shell employee discount so that she could obtain a reduced-price companion fare for her niece. Shell reimbursed Mora in full for the price of her airline ticket, which cost more than $8,000.

After Eastridge was terminated, Mora took over some of her duties. Eastridge argues that the expense report audit was a pretext to obscure the real reason for her firing – namely, that she was part of the older HS&E demographic that Tholstrup disliked and that Tholstrup wanted to improve Shell's financial situation by reallocating Eastridge's work to Mora, who, as a younger, less senior employee, received a lower salary than did Eastridge and was entitled to fewer retirement benefits. Eastridge also contends that male employees claimed the same types of expenses, using the same procedure, that she did, without being disciplined.

Shell counters that Tholstrup's decision was based upon a reasonable interpretation of the information available to her and that the evidence does not support Eastridge's allegations. Shell maintains that Eastridge violated, at the very least, its policy governing the manner in which expenses are to be reported, while there is no

evidence that other employees did so. Shell further contends that Tholstrup had reason to believe that Eastridge had engaged in fraud. Shell now moves for summary judgment on all of Eastridge's claims.

## II.  ANALYSIS

### A.  Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* FED. R. CIV. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001) (internal quotation marks and citation omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id*.

### B.  The Title VII Claim

Title VII prohibits an employer from discharging an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII gender discrimination claims are subject to the burden-shifting test set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> *McDonnell Douglas* instructs that the plaintiff must first establish a *prima facie* case of discrimination. . . . Once the plaintiff presents a *prima facie*

> case, the defendant must then articulate a legitimate, nondiscriminatory reason for the questioned employment action. . . . If the defendant is able to do so, the burden shifts back to the plaintiff to produce evidence that the defendant's articulated reason is merely a pretext for discrimination.

*Frank v. Xerox Co.*, 347 F.3d 130, 137 (5th Cir. 2003) (internal citations omitted).

To articulate a *prima facie* case of discrimination, a plaintiff must prove that (1) she is a member of a protected class; (2) she was qualified for the position that she held; (3) she was discharged; and (4) she was replaced with a person who is not a member of the protected class. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999). A plaintiff may establish a *prima facie* case by demonstrating that she was treated differently from similarly situated males. *See, e.g.*, *Krystek v. Univ. of S. Mississippi*, 164 F.3d 251, 257 (5th Cir. 1999).

Here, Eastridge claims that male employees were permitted to violate Shell's expense policy, while she was terminated for doing so. As proof, she points to evidence that several male Shell employees were reimbursed for the costs of boarding their dogs at kennels during business trips. Eastridge argues that these reimbursements violated Shell's policy against company payment of day care expenses for children.

Day care expenses, which are presumably incurred in the day-to-day course of employment, are, however, meaningfully unlike kennel costs, which are likely to be infrequent and minimal expenditures necessary to facilitate long-distance or extended travel. Moreover, the cost of boarding a dog – or of securing short-term care for a child during a trip – is not comparable to the cost of travel, lodgings, and meals for an adult spouse on an overseas journey.[3] Finally, Eastridge herself notes that Shell also reimbursed a female Shell employee, Holly Teague, for kennel costs, thereby

---

[3] Eastridge's argument might be a stronger one if she could demonstrate that Shell had paid for male employees to take their dogs along on business trips.

7

undermining Eastridge's own argument that Shell's refusal to accept her expense report was the product of gender discrimination.

Eastridge also argues that Shell improperly terminated her for "bundling" her hotel expenses, a practice in which male employees routinely engaged. But, again, Eastridge's own summary judgment evidence demonstrates that Bebe Mora, a female employee, also "bundled" her expenses without incurring disciplinary action. It appears, then, that any disparate treatment with respect to employees' "bundling" of expenses did not result from gender discrimination. Similarly, Eastridge argues that she was terminated for failing to provide itemized cellular telephone statements, while male employees were permitted to submit only the first, summary page of each statement. But her evidence demonstrates that Holly Teague also provided only the first page of each statement.

The true gravamen of Eastridge's complaint appears to be that Shell discriminated against her because of *both* her age *and* her gender – that is, that the activities in which she engaged were permissible for male or young female employees but not for older women. If true, such a policy would unquestionably violate Title VII. The Fifth Circuit has held, however, that a plaintiff claiming disparate treatment must demonstrate "that the misconduct for which she was discharged was nearly identical" to that of an employee outside of the protected class. *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990).

Here, Eastridge was charged with seeking reimbursement for expenses incurred by her spouse; violating the policy governing reporting of telephone expenses; *and* improperly "bundling" her expenses. In addition, Shell has offered evidence showing

that Eastridge was at least accused by her secretary of lying, when first asked, about her whereabouts and activities during the last few days of the London trip. Eastridge has not shown that any other Shell employee engaged in every specified type of misconduct and was nonetheless retained. Accordingly, the Court finds that Eastridge has failed to establish a *prima facie* case of disparate treatment gender discrimination.

### C.     The ADEA Claim

The ADEA prohibits an employer from discharging an individual because of his or her age. 29 U.S.C. § 623(a)(1). Like Title VII claims, ADEA claims supported only by circumstantial evidence are governed by the *McDonnell Douglas* burden-shifting test. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

To establish a *prima facie* case of age discrimination, a plaintiff must show that (1) she was a member of a protected class; (2) she was qualified for the position that she held; (3) she was discharged; and (4) she was replaced by someone outside of the protected class. *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 654 (5th Cir. 1996). Here, it is uncontested that Eastridge was within the class protected by the ADEA, that she was qualified, and that she was discharged. Shell disputes, however, that Eastridge was replaced by anyone at all.

Eastridge contends that she was replaced by Bebe Mora, a younger woman. As support for this allegation, she has testified that she was told by various former coworkers that Mora took over her job duties after her termination. Eastridge cannot, however, name any particular coworker who made such a comment, nor can she say when these conversations took place. Eastridge also argues that Mora must have taken over her duties, because Mora was the only other employee in the department at the time of

9

Eastridge's termination. None of Eastridge's allegations is adequate evidence to defeat summary judgment, particularly in light of Williams's deposition testimony that Mora took over no more than 10% of Eastridge's work. The Court therefore finds that summary judgment should be granted for Shell on Eastridge's ADEA claim.

### D.     The ERISA Claim

It is settled law in this circuit that a plaintiff alleging a claim under Section 510 of ERISA must show that the employer had the specific intent to violate ERISA. *See Unida v. Levi Strauss & Co.*, 986 F.2d 970, 979-80 (5th Cir. 1993). That is, such a plaintiff must demonstrate that her employer terminated her for the purpose of depriving her of benefits to which she would otherwise be entitled under ERISA. *Id.* at 979. Eastridge attempts to make the required showing by pointing out that Tholstrup noted, in several meetings, that a large number of HS&E employees were nearing retirement age. According to Eastridge, the necessary inference is that Tholstrup was concerned about the retirement benefits that Shell would soon be obligated to provide to those employees.

Eastridge's interpretation is, however, disproven by Shell's summary judgment evidence, which shows that Tholstrup's real concern was the loss of institutional memory and expertise that would accompany the loss of many senior employees over a short period of time. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 1, at 4 (Bates No. 01992) ("Staffing – many people close to retirement. There [sic] decision has a major impact on staffing model. Want to have 2-3 strong individuals from outside as pass-through assignment.").) Because Eastridge has produced no countervailing evidence of specific intent to deprive her of ERISA benefits, summary judgment for Shell is appropriate on Eastridge's ERISA claim.

### III.     CONCLUSION

Eastridge has failed to establish a *prima facie* case of gender discrimination, age discrimination, or an ERISA violation.  Accordingly, Defendant's motion for summary judgment is in all respects **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 1st day of June, 2006.


_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE


**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**